1 | Lawrence J. Friedman (Admitted Pro Hac Vice)
    lfriedman@fflawoffice.com
2 | Steven R. Shaver (Admitted Pro Hac Vice)
    sshaver@fflawoffice.com
3 | Shauna A. Izadi  (Admitted Pro Hac Vice)
    sizadi@fflawoffice.com
4 | FRIEDMAN & FEIGER, L.L.P.
5301 Spring Valley Road, Suite 200
5 | Dallas, Texas  75254
Telephone:  (972) 788-1400
6 | Facsimile:  (972) 776-5313

7 | Terry W. Bird - State Bar No. 49038
    wb@birdmarella.com
8 | Marc E. Masters - State Bar No. 208375
    mem@birdmarella.com
9 | Lisa M. Lawrence - State Bar No. 240375
    lml@birdmarella.com
10 | BIRD, MARELLA, BOXER, WOLPERT,
    NESSIM, DROOKS & LINCENBERG, P.C.
11 | 1875 Century Park East, 23rd Floor
Los Angeles, California  90067-2561
12 | Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| NATIONAL CORPORATE TAX CREDIT FUNDS III, IV, VI, VII; et al., | CASE NO. CV-07-3528 PSG (FMOx) |
| Plaintiffs, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR STAY DURING PARALLEL CRIMINAL PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| BRIAN POTASHNIK; et al., | |
| Defendants. | **[Declaration of Steven R. Shaver concurrently filed]** |
| | Date:  March 10, 2008 |
| | Time:   1:30 p.m. |
| | Dept.:  790 |
| | Assigned to Hon. Philip S. Gutierrez |

3410.2:244733.1

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR STAY PENDING OUTCOME OF PARALLEL
CRIMINAL CASE; MEMORANDUM OF POINTS AND AUTHORITIES

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 10, 2008 at 1:30 p.m. or as soon thereafter as the matter may be heard before the Honorable Philip S. Gutierrez in Courtroom 790 of the United States District Court for the Central District of California, Edward R. Roybal Building and Courthouse 3, 255 E. Temple Street, Los Angeles, California 90012, defendants Brian Potashnik; Southwest Housing Management Company, Texas Brook Properties Corp., Southwest Housing Investment, Inc., Southwest Housing Development Company Inc., Texas Melody Properties Corp., Texas Birchwood Properties Corp., Arlington Senior Housing Development Corp. and Texas Kirnwood Properties, Corp. (collectively "Defendants"), will and hereby do respectfully move this Court to stay this action during the parallel criminal case currently proceeding against defendant Brian Potashnik in the United States District Court for the Northern District of Dallas.

This motion will be based on this notice, the attached memorandum of points and authorities, the declaration of Steven R. Shaver, filed concurrently herewith, the files and records in this action, any matters of which judicial notice may be taken, and on such further evidence and oral argument as may be presented at the time of hearing.

Pursuant to Local Rule 7.3, Defendants' counsel conferred with Mr. Turrill, counsel for Plaintiffs, and Mr. Turrill opposes the filing of this Motion.

DATED: February 15, 2008    Lawrence J. Friedman
                            Steven R. Shaver
                            Shauna A. Izadi
                            FRIEDMAN & FEIGER, L.L.P.



                            By: /s/
                            _____
                                Steven R. Shaver
                                Attorneys for Defendants

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR STAY PENDING OUTCOME OF PARALLEL
CRIMINAL CASE; MEMORANDUM OF POINTS AND AUTHORITIES

# **TABLE OF CONTENTS**

**Page**

I     INTRODUCTION ................................................................................1

II    BACKGROUND .................................................................................2

     A.    The Civil And Criminal Cases Involve Significantly Overlapping Subject Matter, Witnesses And Parties. ................................................2

     B.    Discovery In The Civil And Criminal Actions Has Not Yet Begun .................................................................................................4

III   ARGUMENT ......................................................................................5

     A.    Because An Indictment Has Already Been Issued In The Criminal Proceeding And Because The Subject Matter Of The Criminal And Civil Proceedings Significantly Overlap, This Is Among The "Strongest" Cases For A Stay. ............................................5

     B.    The Five Discretionary Factors Articulated By The Ninth Circuit Also Weigh Heavily In Favor Of Granting A Stay .................................8

         1.    Granting A Stay In This Action Will Not Prejudice Plaintiffs. ....................................................................................8

         2.    Denying A Stay Will Unduly Burden *All* Defendants .................9

         3.    Granting A Complete Stay Will Conserve Judicial Resources, Enhancing The Courts' Convenience And Efficiency. .............................................................................10

         4.    The Interests Of Potashnik's Wife, Who Is Not A Party To The Civil Litigation, But Is Named As A Defendant In The Indictment, Would Be Severely Undercut If A Stay Is Denied. ..................................................................................12

         5.    The Public Has A Far Greater Interest In A Criminal Prosecution Involving Corruption Of Elected Officials Than In A Civil Action Based On Private Partnership Agreements. ...........................................................................13

IV   CONCLUSION ................................................................................14

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*ATSA of California, Inc. v. Continental Insurance Co.,*
702 F.2d 172 (9th Cir. 1983) ............................................................. 9

*AT & T Technologies, Inc. v. Communications Workers of America,*
475 U.S. 643, 106 S.Ct. 1415 (1986) ................................................ 4

*Brown v. Dillard's, Inc.,*
430 F.3d 1004 (9th Cir. 2005) .................................................... 7, 13

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.,*
207 F.3d 1126 (9th Cir. 2000) ......................................................... 9

*Circuit City Stores, Inc. v. Adams,*
532 U.S. 105 (2001) ......................................................................... 5

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938, 115 S.Ct. 1920 (1995) ............................................... 3

*Lucas v. Gund, Inc.,*
450 F. Supp. 2d 1125 (C.D. Cal. 2006) ........................................... 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614, 105 S.Ct. 3346 (1985) ............................................... 9

*Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,*
460 U.S. 1, 103 S.Ct. 927 (1982) .................................................... 6

*Perry v. Thomas,*
482 U.S. 483, 107 S. Ct. 2520 (1987) ........................................ 5, 6

*Rush v. Oppenheimer & Co.,*
779 F.2d 885 (2d Cir. 1985) ............................................................ 9

*Lake Communications, Inc. v. ICC Corp.,*
738 F.2d 1473 (9th Cir. 1984), overruled on................................ 9, 12

*Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co., Inc.,*
572 F.2d 1328 (9th Cir. 1978) ......................................................... 9

*Sovak v. Chugai Pharmaceutical Co.,*
280 F.3d 1266 (2002) ...................................................................... 6

*Stewart v. Paul, Hastings, Janofsky & Walker, LLP,*
201 F. Supp. 2d 291 (S.D.N.Y. 2002) ............................................. 4

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.,*
310 F.3d 102 (2d Cir. 2002) (filing of 12(b)(6) ............................. 9

*Williams v. Cigna Financial Advisors, Inc.*,
    56 F.3d 656 (5th Cir. 1995) .................................................................7, 12

**State Cases**

*Aviation Data, Inc. v. American Express Travel Related Services Co., Inc.*,
    152 Cal. App. 4th 1522 (2007) ...............................................................6, 7

*Berman v. Health Net*,
    80 Cal. App. 4th 1359 (2000) .................................................................8, 11

*Christensen v. Dewor Developments*,
    33 Cal. 3d 778 (1983) .............................................................................8, 10

*Davis v. Continental Airlines, Inc.*,
    59 Cal. App. 4th 205 (1997) ..............................................................8, 10, 12

*Dream Theater, Inc. v. Dream Theater*,
    124 Cal. App. 4th 547 (2004) .......................................................................5

*Engella v. Permenente Medical Group, Inc.*,
    15 Cal. 4th 951 (1997) ..................................................................................8

*Giuliano v. Inland Empire Personnel, Inc.*,
    149 Cal. App. 4th 1276 (2007) ......................................................................6

*Groom, supra*,
    82 Cal. App. at 1194-96 ..............................................................................11

*Groom v. Health Net*,
    82 Cal. App. 4th 1189 (2000) ......................................................................10

*Guess?, Inc. v. Super. Ct.*,
    79 Cal. App. 4th 553 (2000) ...................................................................8, 11

*Kennedy, Cabot & Co. v. National Association of Securities Dealers, Inc.*,
    41 Cal. App. 4th 1167 (1996) ........................................................................3

*Moncharsh v. Heily & Blas*,
    3 Cal. 4th 1 (1992) .......................................................................................4

*Rodriguez v. American Technologies, Inc.*,
    136 Cal. App. 4th 1110 (2006) ..................................................................4, 5

*Saint Agnes Medical Center v. Pacificare of California*,
    31 Cal. 4th 1187 (2003) ...........................................................................9, 13

*Sobremonte v. Super. Ct.*,
    61 Cal. App. 4th 980 (1998) ...............................................................8, 10, 11

**Federal Statutes**

9 U.S.C. § 2 .................................................................................................5

# MEMORANDUM OF POINTS & AUTHORITIES

## I

## INTRODUCTION

Defendant Brian Potashnik ("Potashnik"), who is the President of each corporate defendant in this action,[1] has been indicted by the federal government on fourteen counts of bribery and conspiracy to commit bribery of public officials in order to obtain federal and state tax credits for the development of affordable housing complexes by two of the companies named as defendants in this action: Southwest Housing Management Company and Southwest Housing Development Company, Inc. *See U.S. v. Donald W. Hill, et al.* (Case No. 3:07CR289-R) ("Indictment"), attached as Exhibit A to the Declaration of Steven R. Shaver ("Shaver Decl."). Since the Government's Indictment and Plaintiffs' First Amended Complaint ("FAC") involve significantly overlapping subject matter – namely, the acts, operations and accounting practices of the corporate defendants during their development of affordable housing complexes – Potashnik, as President of these entities, cannot exercise his Fifth Amendment rights without compromising his ability to defend both himself and the corporate defendants in the instant action. Confronted with this Hobson's choice, both Potashnik and the corporate defendants will suffer irreparable prejudice, unless this Court orders a complete stay in this action, pending resolution of the criminal case initiated by the Indictment. As detailed below, such a stay is necessary to protect Potashnik's Fifth Amendment interests – as well as the interests of his wife, who also has been named in the Indictment, but who is not a party to the civil action – and to prevent the

---

[1]  These corporate co-defendants include Southwest Housing Management Company, Texas Brook Properties Corp., Southwest Housing Investment, Inc., Southwest Housing Development Company, Inc., Texas Melody Properties Corp., Texas Birchwood Properties Corp., Arlington Senior Housing Development Corp. and Texas Kirnwood Properties Corp. (collectively, "corporate defendants").

1   government from obtaining discovery to which it is not entitled under the Federal Rules

2   of Criminal Procedure.  Moreover, issuing a stay will not prejudice plaintiffs and will

3   both promote the public interest and conserve judicial resources.  The public interest in

4   this case is especially compelling, since the Indictment involves a matter of grave

5   public importance: the alleged corporate involvement in the corruption of elected

6   officials and misallocation of federal and state tax dollars.  The Indictment – which has

7   been the subject of broad media attention in Texas – alleges a bribery and extortion

8   scheme involving fourteen current and former public officials and their associates –

9   including a Texas state representative and the Deputy Mayor of the City of Dallas – to

10   divert tax credits to Potashnik's affordable housing developments.

11                                                    **II**

12                                          **BACKGROUND**

13   **A.      The Civil And Criminal Cases Involve Significantly Overlapping Subject**

14          **Matter, Witnesses And Parties.**

15          Both the civil and criminal cases center on Potashnik and the corporate

16   defendants' construction and management of affordable housing complexes that are

17   funded, in large part, by "federal and . . . state income tax credits."  FAC, ¶ 5; *see also*

18   Indictment, ¶¶ 1-3.   Two of the corporate defendants named in the civil action,

19   Southwest Housing Management Company and Southwest Housing Development

20   Company, Inc., are also named in the Indictment.  The FAC alleges that beginning in

21   1995, plaintiffs entered into six separate partnerships with the corporate defendants to

22   develop six such complexes – all located in and around Dallas, Texas.  *See* FAC at ¶¶ 5,

23   14-19.   Plaintiffs claim that they acted as "Special Limited Partners" in these

24   partnerships – amounting to mere investors – while the corporate defendants – with

25   Potashnik as their "principal" and "alter ego" – were "Operating General Partners,

26   Management Agents, Principals, and/or Guarantors" for the complexes. *See* FAC, 6-7,

27   10. This partnership structure is described in the Indictment as a typical arrangement

28   between entities who participate in the development of affordable housing financed by

3410.2:244733.1                                          2

1  tax credits.  *See* Indictment, ¶ 2.  Plaintiffs allege that during their tenure as general

2  partners, Potashnik and his 'puppet' corporate defendants committed various breaches

3  of contract and fiduciary duties, including "failing to properly and accurately report to

4  plaintiffs the 'Cash Flow' and resulting distributions for each partnership," and

5  "[m]ishandling development fees."[2]  *See* FAC,. ¶ 34.  Among other remedies, plaintiffs

6  demand a full "accounting" of "the 'Cash Flow' and resulting distributions of each

7  partnership."[3]  *See* FAC ¶ 52.

8          The Indictment alleges that beginning in 2002, Potashnik and his wife Cheryl

9  Potashnik (who is not a party to the civil action) obtained tax-credit approvals for the

10 type of affordable housing complexes they developed with plaintiffs' capital by bribing

11 and conspiring to bribe public officials in Dallas, Texas, including a Texas state

12 representative and a Dallas city councilman who had served as both mayor and deputy

13 mayor of Dallas.  *See* Indictment, ¶¶ 27, 30 and 32. It is alleged by the government that

14 Potashnik and his wife accomplished this scheme by funneling money and business

15 favors through two of the corporate defendants in the civil action:  Southwest Housing

16 Management Company ("SW Management") and Southwest Housing Development

17 Company, Inc. ("SHW").

18         Count One of the Indictment charges that Potashnik and his wife used SW

19 Management's name and "corporate office to conceal the rental and utility payments

20 they made" through their affordable housing complexes to bribe a state representative

21 who resided in one of those complexes.  *See* Indictment, p. 29, ¶7.  The Indictment

---

[2]  The FAC also contains causes of action for negligence, violations of California
Business & Professions Code § 17200, unjust enrichment, accounting, breach of the
duty of good faith and fair dealing and declaratory relief based on the same alleged
mishandling of development fees and failure to report cash flow.

[3]  Since the corporate defendants were the general partners in these partnerships, such
an accounting would require the corporate defendants to lay bare their books.

1  broadly alleges that in return, this representative "submitted letters to the [Texas
2  Department of Housing and Community Affairs] in support of SWH's tax credit
3  [development] projects located in her district and sought the support of other elected
4  officials for SWH projects located in other districts." *See* Indictment, ¶ 32.

5      Counts Two through Fourteen of the Indictment charge that Potashnik and his
6  wife conspired with the same state representative to bribe local government officials
7  through, among other things, creating "sham invoices" and "false accounting entries" in
8  the SWH books (p. 57, ¶¶ 28-30, 39-40), as well as causing SWH to cut checks for
9  sham causes (p. 87, ¶ 230), enter into "a sham consulting agreement," (p. 54, ¶¶ 9-10)
10 sign "sham deed restrictions" (p. 53, ¶ 4) and award construction bids to the local
11 officials' associates (p. 50, ¶ 4) – all in an effort to conceal the bribe payments.

12 **B.     Discovery In The Civil And Criminal Actions Has Not Yet Begun.**

13      The Indictment in this action was returned on September 27, 2007 and unsealed
14 on October 1, 2007.  No discovery has yet taken place in the criminal action; in fact,
15 only a small portion of the U.S. Attorney's files have been produced and Potashnik's
16 counsel is awaiting the remainder of the files, which are significantly most of the files
17 and in electronic format.  The initial Complaint in the civil action was filed in March
18 2006 and was non-suited a year later to pursue settlement negotiations.  However, the
19 matter was not settled, though, Defendants were surprised by the second suit.
20 Currently, the parties have discussed re-opening discussions and Defendants have
21 agreed to take the lead in these discussions.  Plaintiffs filed the FAC on July 5, 2007,
22 and defendants answered on November 29, 2007.  Although the parties have been
23 engaged in motion practice, discovery has not yet begun in the action- except written
24 discovery has been sent by Plaintiffs to Defendants, but is not due until on or about
25 March 1, 2008, and Plaintiffs have sent deposition notices beginning in early March
26 2008.

27
28

# III

## ARGUMENT

**A.    Because An Indictment Has Already Been Issued In The Criminal Proceeding And Because The Subject Matter Of The Criminal And Civil Proceedings Significantly Overlap, This Is Among The "Strongest" Cases For A Stay.**

A district court may in its discretion "stay civil proceedings pending the outcome of parallel criminal proceedings." *Federal Savings and Loan Insurance Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). Grant of such a stay depends upon "the particular circumstances and competing interests involved in the case." *Id.* Factors courts consider in weighing these circumstances and interests include: "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Id.* at 903.

The federal courts have repeatedly recognized that "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Sec. and Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375-1376 (D.C. Cir. 1980) (emphasizing that because no indictment had been returned, no Fifth Amendment privilege had been threatened).[4]

---

[4]    *See also, e.g., State Farm Mut. Auto Ins. Co. v. Beckham-Easley*, 2002 WL 31111766, at *2 (E.D. Pa. Sept. 18, 2002) ("A court is most likely to grant a stay of civil proceedings where an indictment has been returned," since [t]he potential for self-incrimination is the greatest at this stage."); *Chao v. Fleming*, 498 F. Supp. 2d 1034, (footnote continued)

1   *Accord, Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003); *Maloney v.*

2   *Gordon*, 328 F. Supp. 2d 508, 511 (D. Del. 2004). This is because "[t]he noncriminal

3   proceeding, if not deferred, might undermine the party's Fifth Amendment privilege

4   against self-incrimination, expand rights of criminal discovery beyond the limits of

5   Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the

6   prosecution in advance of criminal trial, or otherwise prejudice the case." *Dresser,*

7   *supra*, 628 F.2d. at 1376. The extent to which the subject matter of the civil and

8   criminal cases overlap will necessarily determine the risk of such prejudice affecting a

9   particular defendant. *See, e.g., Crawford & Sons, Ltd. v. Besser*, 298 F. Supp. 2d 317,

10  319 (E.D.N.Y. 2004) (noting that federal courts regularly consider "the extent to which

11  the issues in the criminal case overlap with those presented in the civil case" in

12  assessing prejudice to defendant if stay not granted).

13      Here, a federal indictment has already issued against Potashnik, accusing him of

14  using at least two of the corporate defendants – SWH and SW Management – in an

15  alleged plot to bribe elected officials in exchange for tax-credit approvals for affordable

16  housing developments in the Dallas area, like the six developments at issue in the civil

17  suit. The FAC centers on the same type of tax credits issuing from such government

18  approvals – funds which plaintiffs claim defendants "mishandled." Although the

19  Indictment does not specifically implicate the six affordable housing complexes at issue

20  in the FAC, the two actions share a common nucleus of facts, including the business

21  _____

22  1037 (W.D. Mich. 2007) ("[C]ourts recognize that the case for a stay is strongest where the defendant has already been indicted."); *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D.

23  12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts

24  will stay a civil proceeding when the criminal investigation has ripened into an indictment."); *Johnson v. New York City Police Dept.*, 2003 WL 21664882, at *2

25  (S.D.N.Y. July 16, 2003) ("The existence of an indictment generally favors the granting

26  of a stay in a related civil proceeding . . . because the civil action, if not stayed, might undermine the criminal defendant's Fifth Amendment privilege against self-

27  incrimination.").

28

3410.2:244733.1

6

1   practices and accounting records of the corporate defendants – especially those of SWH

2   and SW Management – and of Potashnik himself.  The Indictment specifically charges

3   Potashnik and his wife with funneling bribes through the books of SWH and SW

4   Management, which played the same role vis-à-vis the developments at issue in the

5   Indictment as they did in the developments identified in the FAC.  It is a distinct

6   possibility that the government may at some point in the future discover that the

7   allegedly corrupt practices charged in the Indictment also factored into the approvals

8   obtained by Potashnik and the corporate entities in the civil action.

9       Owing to this significant overlap in the subject matter of the civil action and the

10  criminal indictment, and given that Potashnik is the President of his corporate co-

11  defendants, "[p]roceeding with discovery [in the civil suit] would force [Potashnik] into

12  the uncomfortable position of having to choose between waiving [his] Fifth

13  Amendment privilege or effectively forfeiting the suit" – not only as to himself, but

14  also as to the corporate defendants.[5]  *Volmar Distrib., Inc. v. New York Post Co.*, 152

15  F.R.D. 36, 39 (S.D.N.Y. 1993).  However, a "[c]ourt can exercise its discretion to

16  enable a defendant to avoid this unpalatable choice when to do so would not seriously

17  hamper the public interest."  *Brock v. Tolkow*, 109 F.R.D. 116, 120-121 (E.D.N.Y.

18  1985) (granting stay even where indictment had not yet been handed down).  If

19  Potashnik chooses to exercise his Fifth Amendment rights in the civil suit, his ability to

20  defend both himself and the corporate defendants will be severely compromised, if not

21  entirely foreclosed.  On the other hand, any testimony that Potashnik provides in that

22  suit could incriminate both himself and his wife, who is not even a party to the civil

23  suit, or at the very least, "risk providing the government with leads or evidence that

24  may be used against them in the criminal case."  *Tolkow, supra*, 109 F.R.D. 116 at 120.

25

26  [5] Although civil defendants may refuse to answer discovery questions based on their
    Fifth Amendment rights, any such refusal subjects civil defendants to "adverse
27  inferences."  *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551 (1976).

28

1   Moreover, given that discovery in civil litigation is significantly broader than any
2   allowed in a criminal proceeding, permitting discovery to begin in this case could
3   provide the government with information to which it would not ordinarily have access.
4   *Compare, e.g.*, Federal Rule of Civil Procedure 26 (allowing "discovery regarding any
5   matter . . . that is relevant to the claim or defense of any party) with the constrictive
6   Federal Rule of Criminal Procedure 16. As the Fifth Circuit has recommended, "[i]n
7   handling motions for a stay of a civil suit until the disposition of a criminal prosecution
8   on related matters . . . , a judge should be sensitive to the difference in the rules of
9   discovery in civil and criminal cases." *Campbell v. Eastland*, 307 F.2d 478, 487 (5th
10  Cir. 1962). And finally, if the civil case moves forward, it very well may expose the
11  basis of Potashnik's defense to the federal prosecutors in advance of criminal trial.

12   Because the Indictment involves issues that significantly overlap with those in
13  the civil action, Potashnik would be severely prejudiced if this Court does not stay the
14  civil action pending resolution of the criminal case. On this basis alone, this Court
15  should stay the action.

16  **B.      The Five Discretionary Factors Articulated By The Ninth Circuit Also**
17  **Weigh Heavily In Favor Of Granting A Stay.**

18   In addition to the fact that the subject matter of the Indictment significantly
19  overlaps with that of the civil action, "the particular circumstances and competing
20  interests involved in the case" also strongly favor granting a stay. *Molinaro, supra*, 889
21  F.2d at 902.

22  **1.      Granting A Stay In This Action Will Not Prejudice Plaintiffs.**

23   Although "[p]laintiffs have a legitimate interest in the expeditious resolution of
24  their case," that interest is "trumped by [Potashnik's] interest in avoiding the quandary
25  of choosing between waiving [his] Fifth Amendment rights or effectively forfeiting the
26  civil case," especially since "the subject matter of both cases overlaps to a significant
27  degree." *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Transworld*
28  *Mechanical, Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995) (rejecting plaintiffs' claim

3410.2:244733.1

8

1   of prejudice and granting stay where indictment had already been handed down). *See*

2   *also Volmar, supra*, 152 F.R.D. at 40 (holding that while a "stay will result in

3   inconvenience and delay to plaintiffs, . . . under settled authority the Fifth Amendment

4   is the more important consideration"). Moreover, there is little chance that staying this

5   action pending resolution of the criminal proceedings against Potashnik will undermine

6   plaintiffs' ability to gather evidence when the case resumes. On the contrary, as several

7   courts have observed, "evidence gathered during the criminal prosecution can later be

8   used in the civil action." *Tolkow, supra*, 109 F.R.D. at 120. Here, as in *Volmar, supra*,

9   152 F.R.D. at 40, "due to the overlapping issues in the criminal and civil trials, the

10  criminal justice system will help safeguard the evidence, and any resulting incarceration

11  could only serve to insure the availability of the parties." In fact, "the resolution of the

12  criminal case may later streamline discovery in the civil case . . . and ultimately inure to

13  the plaintiff[s'] benefit in this action." *Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527,

14  532 (S.D. W.Va. 2005).

15        Here, a stay will both streamline discovery and preserve evidence, since both

16  actions focus on the same business and accounting practices of the corporate

17  defendants. Moreover, since Potashnik's ability to exercise his Fifth Amendment rights

18  unimpeded is a "more important consideration" than any claimed inconvenience on

19  plaintiffs' part, and further, since staying this action will likely enhance, rather than

20  hamper, plaintiffs' ability to gather evidence, this Court should grant defendants'

21  request for a stay.

22        **2.     Denying A Stay Will Unduly Burden *All* Defendants.**

23        As discussed above, if this action is allowed to proceed in tandem with the

24  criminal case, Potashnik will be forced into the "unpalatable" position of choosing

25  either to waive his Fifth Amendment rights or to forfeit the civil suit. *Tolkow, supra*,

26  109 F.R.D. 116, 120-121. This choice has chilling implications not only for Potashnik,

27  but also for the corporate defendants which plaintiffs claim he controls. As President of

28  these defendants, Potashnik is, at the very least, a central figure whose testimony is

1   indispensable in defending the civil action.  The federal courts have recognized that

2   when such a central figure is indicted, the non-indicted defendants will also be

3   prejudiced.  As the court reasoned in *S.E.C. v. Downe, supra*, 1993 WL 22126, at *14,

4   where the central figure was merely under investigation and had not yet been indicted:

5       Even a cursory review of the complaint reveals that Downe is the central
    figure in this action and, thus, the taking of Mr. Downe's deposition will

6       be critical for the other defendants in this civil action. It would be unfair
    and prejudicial to the defendants to require them to continue with

7       discovery without first having an opportunity to depose Downe and
    receive any other information relating to Downe which might otherwise

8       be available to them in the absence of a stay.

9   The court further noted that the plaintiff "would be the beneficiary of an unfair

10  litigation advantage if the Court instituted a limited stay, rather than a stay of the entire

11  action." *Id.* Here, as in *Downe*, "it would be unfair and prejudicial to the [corporate]

12  defendants to require them to continue with discovery."  If Potashnik chooses to

13  exercise his Fifth Amendment rights in the civil action and refuses to offer any

14  deposition testimony, it will be all but impossible for the corporate defendants to mount

15  a complete defense – or perhaps any defense at all.

16      Moreover, since plaintiffs themselves argue that Potashnik is the "alter ego" of

17  the corporate defendants (Cmplt., ¶10), plaintiffs should be estopped from asserting that

18  a stay should not apply to these defendants. *See Transworld, supra*, 886 F.Supp. at

19  1141 ("The fact that the other two defendants, Transworld Mechanical and Transworld

20  Plumbing & Heating, Inc., were not indicted does not weigh against a stay since

21  plaintiffs themselves allege that all four entities are 'affiliated business enterprises and

22  alter ego[s] of each other.'").

23      Thus, since Potashnik is a central figure in this action, whose invocation of Fifth

24  Amendment privilege would prejudice *all* of the defendants, this action should be

25  stayed in its entirely.

26      **3.**      **Granting A Complete Stay Will Conserve Judicial Resources,**

27                 **Enhancing The Courts' Convenience And Efficiency.**

28      Federal courts have repeatedly held that staying a civil action pending resolution

3410.2:244733.1

10

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR STAY PENDING OUTCOME OF PARALLEL
CRIMINAL CASE; MEMORANDUM OF POINTS AND AUTHORITIES

1  of parallel criminal proceedings conserves judicial resources by avoiding duplicative
2  discovery and unnecessary rulings.  As the court observed in *Javier H., supra*, 218
3  F.R.D. at 75, "by proceeding first with the criminal prosecution, the Court makes
4  efficient use of judicial time and resources by insuring that common issues of fact will
5  be resolved and subsequent civil discovery will proceed unobstructed by concerns
6  regarding self-incrimination." *See also Maloney, supra*, 328 F. Supp. at 513 (entering a
7  stay "obviates the need to make rulings regarding potential discovery disputes
8  involving issues that may affect the criminal case" and in turn, "the outcome of the
9  criminal proceedings may guide the parties in settlement discussions and potentially
10  eliminate the need to litigate some or all of the issues"); *Volmar, supra*, 152 F.R.D. at
11  41 ("evidence presented at a criminal trial may obviate the need for document
12  production and depositions, and would substantially reduce both plaintiffs' and
13  defendants' litigation costs"); *Johnson v. New York City Police Dept.*, 2003 WL
14  21664882, at *2 (S.D.N.Y. July 16, 2003) ("the criminal action may make future civil
15  discovery more efficient since transcripts from the criminal case would be available").
16      The courts have determined that a partial stay does not have the same felicitous
17  effect on judicial economy.  Therefore, the courts are more inclined to order a
18  complete, rather than partial stay, even when some – or all but one – of the defendants
19  remains un-indicted. As the court noted in *Volmar, supra*, 152 F.R.D. at 41, "a partial
20  stay may lead to duplicative depositions," since "once it is lifted plaintiffs will seek to
21  depose [the indicted defendants], and then may need to re-depose individuals in light of
22  the critical testimony [the indicted defendants] are likely to give in their depositions."
23  To avoid such wasteful duplication, the *Volomar* court ordered a complete stay as to all
24  defendants.  *Id.  See also SEC v. Downe*, 1993 WL 22126 at *14, 1993 U.S.Dist.
25  LEXIS 753 at *51 (S.D.N.Y. Jan. 26, 1993) (granting complete rather than partial stay
26  because "central figure" was subject to criminal investigation and "partial stay would
27  likely result in additional expenses for the parties without expediting the discovery
28  process"). As the court found in *Transworld, supra*, 886 F.Supp. at 1141:

[I]t is more efficient to grant a complete stay as to all defendants rather than only a partial stay as to the individual ones. Plaintiffs themselves concede that the [individual defendants] are the central figures in this case, as they are the "controlling officers of the corporate defendants . . . ." Thus, because of the importance of their testimony, a partial stay could lead to duplicative discovery efforts. Plaintiffs might need to re-issue interrogatories or re-depose certain individuals in light of the testimony given by the [indicted defendants].

Here, as in *Transworld* and *Volmar*, Potashnik is the "central figure" in the civil action and consequently, his testimony is of the utmost importance, especially in light of plaintiffs' alter ego allegations. Allowing this case to proceed against the corporate defendants without obtaining the deposition of their President would doubtless require duplicative discovery. Therefore, judicial resources can be best conserved, and the courts' convenience and efficiency most enhanced, by entering a complete stay in this action.

**4.    The Interests Of Potashnik's Wife, Who Is Not A Party To The Civil Litigation, But Is Named As A Defendant In The Indictment, Would Be Severely Undercut If A Stay Is Denied.**

The pending civil action places Cheryl Potashnik in a precarious position, at the mercy of her husband's decision to offer or refuse to provide testimony in that action. Since she is not a party to the civil action, Cheryl Potashnik cannot insist that her husband refuse to testify in that action, even if his testimony would adversely affect her in the criminal proceeding. Thus, Potashnik's "uncomfortable position of having to choose between waiving [his] Fifth Amendment privilege or effectively forfeiting the [civil] suit" is complicated by his wife's indictment. Cheryl Potashnik has at least as strong an interest as her husband does in avoiding parallel proceedings. Staying this action will protect Cheryl Potashnik's interests by eliminating the threat that her own criminal defense will be damaged by her husband's testimony in a civil action to which she is not a party.

1    **5.    The Public Has A Far Greater Interest In A Criminal Prosecution**
2         **Involving Corruption Of Elected Officials Than In A Civil Action**
3         **Based On Private Partnership Agreements.**

4         The "public has a substantial interest in the integrity or lack of integrity of those

5    who serve them in public office." *U.S. v. Smith*, 776 F.2d 1104, 1114 (3d Cir. 1985).

6    Moreover, in general, "[t]he public's interest in the integrity of the criminal case is

7    entitled to precedence over the civil litigant" – even when the civil litigant is also

8    protecting the public interest. *Javier H., supra*, 218 F.R.D. at 75 (citations omitted).

9    Based on these principles, the court in *Maloney, supra*, 328 F. Supp. 2d at 508, granted

10   a stay in a civil suit brought by county employees against county supervisors who were

11   under criminal investigation. The *Maloney* court held that "a stay in this case would

12   benefit the public by allowing the criminal prosecution of the Defendants, who are

13   public officials, to proceed unimpeded and unobstructed by any concerns that may arise

14   in discovery in the civil case." *Id.* at 513.

15   Here, as in *Maloney*, the substantial public interest in ensuring the integrity of

16   elected officials mandates that the civil action be stayed so that the criminal

17   prosecution may "proceed unimpeded and unobstructed by any concerns that may

18   arise in discovery in the civil case." The public interest here tips even more

19   dramatically in favor of a stay than in *Maloney*, since this action is a private

20   partnership dispute which bears little or no relationship to any public interest.

21   / / /
22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

3410.2:244733.1

13

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR STAY PENDING OUTCOME OF PARALLEL
CRIMINAL CASE; MEMORANDUM OF POINTS AND AUTHORITIES

1
IV

2
CONCLUSION

3      For all the foregoing reasons, defendants respectfully request that this Court

4 enter a complete stay of this action, pending the conclusion of the parallel criminal

5 proceeding.

6

7 DATED: February 15, 2008          Respectfully submitted,

8                                   Lawrence J. Friedman
9                                   Steven R. Shaver
                                    Shauna A. Izadi
10                                  FRIEDMAN & FEIGER, L.L.P.

11

12                                  By: /s/
13                                       Steven R. Shaver
14                                       Attorneys for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28