1   RUTTER HOBBS & DAVIDOFF
     INCORPORATED
2   GEOFFREY M. GOLD (State Bar No. 142625)
    *ggold@rutterhobbs.com*
3   CHRISTOPHER FOWLER (State Bar No. 243736)
    *cfowler@rutterhobbs.com*
4   1901 Avenue of the Stars, Suite 1700
5   Los Angeles, CA 90067
    Telephone: (310) 286-1700
6   Facsimile: (310) 286-1728
7
    FRIEDMAN & FEIGER, L.L.P.
8   Lawrence J. Friedman (Admitted Pro Hac Vice)
     *lfriedman@fflawoffice.com*
9   Ernest Leonard (Admitted Pro Hac Vice)
     *eleonard@fflawoffice.com*
10  Shauna A. Izadi (Admitted Pro Hac Vice)
     *sizadi@fflawoffice.com*
11  5301 Spring Valley Road, Suite 200
    Dallas, Texas 75254
12  Telephone: (972) 788-1400
    Facsimile: (972) 776-5313
13  Attorneys for Defendants

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16  NATIONAL CORPORATE TAX CREDIT          ) Case No.: CV 07-3528 PSG (FMOx)
    FUNDS III, IV, VI, VII; NATIONAL       )
    CORPORATE TAX CREDIT, INC. III, IV, VI,) Honorable Phillip S. Gutierrez
17  VII,                                   )
                                           ) **DEFENDANTS' OPPOSITION**
18          Plaintiffs,                    ) **TO PLAINTIFFS' FIRST**
                                           ) **AMENDED NOTICE AND**
19      v.                                 ) **MOTION FOR LEAVE TO**
                                           ) **MODIFY THE SCHEDULING**
20  BRIAN POTASHNIK; SOUTHWEST             ) **ORDER AND FILE MOTION**
    HOUSING MANAGEMENT                     ) **FOR TERMINATING**
    COMPANY; TEXAS BROOK                   ) **SANCTIONS**
21  PROPERTIES CORP.; SOUTHWEST            )
    HOUSING INVESTMENT, INC.;              ) **[Declarations of Shauna Izadi and**
22  SOUTHWEST HOUSING                      ) **Steven Shaver concurrently filed**
    DEVELOPMENT COMPANY, INC.;             ) **herewith]**
23  TEXAS MELODY PROPERTIES                )
    CORP.; TEXAS BIRCHWOOD                 ) Date:    February 1, 2010
24  PROPERTIES CORP.; ARLINGTON            ) Time:    1:30 p.m.
    SENIOR HOUSING DEVELOPMENT             ) Dept.:   790
25  CORP.; TEXAS KIRNWOOD                  )
    PROPERTIES CORP.,                      ) Pretrial Conf: January 25, 2010
26                                         ) Trial Date: February 9, 2010
            Defendants.                    )
27                                         )
28

517165

1

# TABLE OF CONTENTS

2    I.      INTRODUCTION ............................................................................ 1

3    II.     ARGUMENT ................................................................................... 2
4
5            A.    Plaintiffs Have Failed to Show Good Cause for
                   Leave of Court ................................................................. 2
6
7            B.    Defendants Would Suffer Undue and Extreme Prejudice
                   If Leave is Granted .......................................................... 5
8
9            C.    Plaintiffs Have Not Demonstrated Prejudice ................ 5

10   III.    PLAINTIFFS ARE NOT ENTITLED TO TERMINATING
             SANCTIONS ................................................................................... 8
11
12           A.    Background ....................................................................... 8

13           B.    The Record is Devoid of Evidence Substantiating
                   Terminating Sanctions ................................................... 14
14

15           C.    Plaintiffs Have Not Demonstrated Prejudice ............... 18

16           D.    Plaintiffs Have Failed to show Lesser Sanctions
                   Would be Ineffective ..................................................... 19
17

18   III.    CONCLUSION ............................................................................. 21

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## CASES

3
4
*Adriana Int'l Corp. v. Thoeren, et. al.,*
913 F.2d 1406 (9th Cir. 1990) .............................................................................. 14, 20

5
6
*Chrysler Corp. v. Carey,*
186 F.3d 1016 (8th Cir. 1999) .............................................................................. 15

7
8
*Computer Task Group, Inc. v. Brotby,*
364 F.3d 1112 (9th Cir. 2004) .............................................................................. 19-20

9
10
*FDIC v. Conner,*
20 F.3d 1376, 1380 (5th Cir. 1994) ...................................................................... 15

11
12
*Fjelstad v. Am. Honda Motor Co.,*
762 F.2d 1334 (9th Cir. 1985) .............................................................................. 14

13
14
*Hatcock v. Navistar Int'l Transp. Corp.,*
53 F.3d 36 (4th Cir. 1995) ................................................................................... 20

15
16
*Henderson v. Duncan,*
779 F.2d 1421 (9th Cir. 1986) .............................................................................. 14

17
18
*Henry v. Gill Indus., Inc.,*
983 F.2d 943 (9th Cir. 1993) ................................................................................ 18

19
20
*Hyde & Drath v. Baker*
24 F.3d 1162 (9th Cir. 1994) ................................................................................ 15

21
22
*In re Exxon Valdez,*
102 F.3d 429 (9th Cir. 1996) ................................................................................ 14-15

23
24
*Johnson v. Mammoth Recreations, Inc.,*
975 F.2d 604 (9th Cir. 1992) ................................................................................ 2

25
26
*Leon v. IDX Systems Corp.,*
464 F.3d 951 (9th Cir. 2006) ................................................................................ 15-16

27
28
*Malone v. U.S. Postal Serv.,*

1    833 F.2d 128 (9th Cir. 1987)...................................................................14

2    *Maynard v. Nygren,*
3    332 F.3d 462 (7th Cir. 2003). ..........................................................15, 16

4    *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*
5    427 U.S. 639, 96 S.Ct. 2778, 2780-2781(1976) .............................15

6    *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*,
7    682 F.2d 802 (9th Cir. 1982)............................................................18

8    *Poulis v. State Farm Fire & Cas. Co.*
9    747 F.2d 863 (3rd Cir. 1984)............................................................15

10   *Schroer v. U.S.,*
11   250 F.R.D 531 (DC Colo. 2008).........................................................2

12   *Taurus IP, LLC v. Daimlerchrysler Corp.,*
13   550 F.Supp.2d 947 (W.D. Wis. 2008)...................................................3

14   *United Artists Corp. v. La Cage Aux Folles, Inc.*
15   771 F.2d 1265 (9th Cir. 1985)...........................................................15

16   *United States v. $ 49,000 Currency,*
17   330 F.3d 371 (5th Cir. 2003)............................................................15

18   *Wanderer v. Johnston,*
19   910 F.2d 652 (9th Cir. 1990)........................................................15, 18

20   *Zivkovic v. S. Cal. Edison Co.,*
21   302 F.3d 1080 (9th Cir. 2002)............................................................3

22   **STATUTES**
23
     FED. R. CIV. P. 16......................................................................................2
24
25   FED. R. CIV. P. 37....................................................................................14
26
27
28

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE

## I.     INTRODUCTION

NOW COMES defendants Brian Potashnik; Southwest Housing Management Company, Texas Brook Properties Corp., Southwest Housing Investment, Inc., Southwest Housing Development Company Inc., Texas Melody Properties Corp., Texas Birchwood Properties Corp., Arlington Senior Housing Development Corp. and Texas Kirnwood Properties, Corp. ("Defendants"), and hereby respectfully file this Memorandum in Opposition to Plaintiffs' First Amended Notice of Motion and Motion for Leave To File Motion for Terminating Sanctions, and would respectfully show the Court as follows:

Plaintiffs' Motion for Leave should be denied for the following reasons: (1) Plaintiffs' Motion is untimely in that Plaintiffs seek leave of Court eight (8) months after the motion-cut off period; (2) Plaintiffs have failed to show any good cause to support leave of court to file their untimely motion for terminating sanctions; (3) Plaintiffs' lacked due diligence in timely re-filing this motion and lacked the requisite due diligence in bringing this motion for hearing; (4) Any leave to allow Plaintiffs to bring their Motion to Terminate Sanctions would cause Defendants extreme prejudice; and, (5) Alternatively, should this Court grant Plaintiffs' leave, a briefing schedule should be afforded under Local Rule 6-1 in order to give Defendants an adequate opportunity to respond.[1]

---

[1] Plaintiffs wrongfully allege that Defendants consented to allowing Plaintiffs' Motion for Terminating Sanctions to be heard on the same day as Plaintiffs' Motion for Leave should it be granted.  **However, Defendants do NOT agree to allowing it being heard the same day.**   Moreover, Plaintiffs cite to Exhibit 25 as evidence demonstrating that in May of 2009, Defendants agreed to this arrangement, however Plaintiffs' Exhibit 25 demonstrates the contrary – Defendants never agreed that Plaintiffs' Motion for Leave and Motion to Terminate Sanctions should be heard on the same day.  In the unlikely event this Court grants Plaintiffs' Motion for Leave, Defendants respectfully object to the Court entertaining Plaintiffs' Motion for

518002

## II.   ARGUMENT

### A.   Plaintiffs Have Failed To Show Good Cause For Leave of Court

The last day to file motions in this case was set by the Court as April 6, 2009. (See Docket Nos. 96 & 147). As previously pointed out by the Plaintiffs, the Court has previously rejected several requests to allow motions after the motion cut-off period. (See *e.g.,* Docket Nos. 142, 143, 147, 191).    Plaintiffs previously filed their Motion for Leave to File Motion for Terminating Sanctions on or about May 11, 2009 (See Docket Nos. 133 and 137). However Plaintiffs failed to set it on the Court's Motion Docket, and is believed to have intentionally delayed bringing their Second Motion for Leave to file Motion for Terminating Sanctions.

The Court's Scheduling Orders may only be modified upon a showing of "good cause." FED. R. CIV. P. 16(b)(4).    "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992).  A district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.*  (citing FED. R. CIV. P. 16, advisory committee notes (1983 amendment)).  "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.;*(internal citations omitted).

Courts have held that a failure to bring the issue before the Court in a timely manner constitutes a lack of exercise in due diligence, and a lack of good cause within the meaning of Fed. R. Civ. P. 16(b)(4). *Schroer v. U.S.,* 250 F.R.D 531 (DC Colo. 2008); *Johnson,* 975 F.2d at 609.   Should a party found to be not diligent, the inquiry should end. *Johnson,* 975 F.2d at 609.

---

Defendants respectfully object to the Court entertaining Plaintiffs' Motion for Terminating Sanctions without putting in place a L.R. 6-1 briefing schedule in place.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' FIRST AMENDED MOTION FOR LEAVE TO FILE MOTION
FOR TERMINATING SANCTIONS

518002

1    It is axiomatic that Plaintiffs have failed to show or demonstrate any
2 diligence in seeking modification of the Court's Scheduling Order, or presenting the
3 issues herein before the Court.    As Plaintiffs once cited in their opposition to
4 Defendants' Motion for Leave to Conduct Limited Discovery (for the *sole* purpose
5 of 'curing' the relief sought in Plaintiffs' lodged Notice and Motion for Terminating
6 Sanctions), "[i]f the party seeking the modification was not diligent, the inquiry
7 should end and the motion to modify should not be granted." *Zivkovic v. S. Cal.*
8 *Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002) (emphasis added); *Johnson,* 975
9 F.2d at 609.

10    Here, Plaintiffs have failed to demonstrate good cause in failing to file their
11 Motion for Terminating Sanctions within the April 6, 2009 motion period or within
12 a reasonable time thereafter.    *Taurus IP, LLC v. Daimlerchrysler Corp.,* 550
13 F.Supp.2d 947 (W.D. Wis. 2008). Plaintiffs waited a month after the motion-cut off
14 date to *first* file their Second Motion for Leave to File Motion for Terminating
15 Sanctions. (See Doc. Nos. 133 & 138).   Plaintiffs removed it from the Court's
16 Motion Docket, and failed to timely re-set it for hearing, or re-file their Motion for
17 Leave to File Motion for Terminating Sanctions for approximately **seven (7)**
18 **months** after its initial filing in May. (See Doc. Nos. 196 & 199).    Further
19 evidence of Plaintiffs' disregard for this Court's rules and scheduling order
20 (including the briefing requirements per L.R. 6-1), Plaintiffs request that this Court
21 entertain their Motion for Terminating Sanctions on February 1, 2010 should this
22 Court grant them leave.    Not only would this be in total violation of the Local
23 Rules, it would cause undue prejudice to Defendants, who would not be afforded the
24 opportunity with a briefing schedule under Local Rule 6-1.

25    Despite Plaintiffs' unfounded ramblings against Defendants' alleged
26 atrocities, Plaintiffs have failed to make any showing that they could not have
27 brought their motion within the motion period, or that they acted with diligence and
28

3

1  in good faith with respect to filing the motion after the motion cut-off period.   The
2  record, however, clearly demonstrates that Plaintiffs waited approximately seven (7)
3  months after its initial filing in May, 2009 to re-file their Second Motion for Leave
4  and set it for hearing, which demonstrates a complete lack of diligence and good
5  cause.   There is absolutely **no reason** cited by Plaintiffs showing why they waited
6  seven (7) months to re-file their Motion for Leave to file Terminating Sanctions and
7  set it for hearing almost nine (9) months later.

8       With respect to Plaintiffs' deceitful allegation that "[i]t was not until after the
9  motion cut-off date, perhaps not coincidentally, that defendants indicated that the
10 would not comply with any of their discovery obligations," it is completely absurd,
11 baseless, and without any merit.  It is Plaintiffs who agreed that no discovery would
12 be necessary due to the impeding settlement. (See Doc. Nos. 151 & 182; See Izadi
13 Declaration ¶ 9).  At the time Plaintiffs' noticed the depositions, Defendants agreed
14 to participate if Plaintiffs would return the settlement funds, which Plaintiffs refused
15 to do.   Also, it was Defendants who, on numerous occasions, offered up the
16 requested deponents for deposition after Plaintiffs' initial May, 2009 filing, and it
17 was the Plaintiffs who have resisted, and to which this Court has denied. (See
18 Docket Nos. 149, 151, 152, 153, 168, 170, 180, 182, 183, and 191)

19      However, the fact remains that Plaintiffs waited approximately seven months
20 after its initial May filing to re-file their Motion for Leave and set it for hearing, and
21 to which Plaintiffs have failed to state or provide any good cause to support such an
22 unnecessary and undue delay.  In addition, Plaintiffs allege that they are seeking a
23 modification of the Court's scheduling order, however, such a statement is without
24 substance and merit as evidenced by Plaintiffs' failure to seek an actual modification
25 of the Court's scheduling order to allow the filing of any other motions by February
26 1, 2010.

27      In any event, it does not excuse Plaintiffs' untimely delay in filing this

28

4

1  Motion for Leave and setting it on the Court's docket for hearing eight (8) days
2  before trial.  It is clear that Plaintiffs knowingly delayed bringing their Motion for
3  Leave, and therefore all further inquiry should be halted, and Plaintiffs' Second
4  Motion for Leave should be denied accordingly.

5  **B.     Defendants would suffer Undue and Extreme Prejudice if Leave is**
6  **Granted**

7        In the event this Court found that Plaintiffs used any inkling of due diligence
8  in timely re-filing this Amended Motion for Leave, the Court must consider whether
9  Defendants would suffer undue prejudice as a result of granting leave of court to
10  allow Plaintiffs' filing of their Motion for Terminating Sanctions.  First, Plaintiffs'
11  Second Motion for Leave is not set for hearing until February 1, 2010 – eight (8)
12  days before the scheduled trial in this matter.  Second, in the event that leave is
13  granted, Defendants should be afforded with the opportunity to brief the issue
14  pursuant to a LR 6-1 schedule.  Third, Defendants have been diligently preparing for
15  the February 9, 2010 trial setting, and should this Court grant Plaintiffs' Motion for
16  Leave and their Motion for Terminating Sanctions, it would cause Defendants the
17  utmost extreme prejudice.   To allow Plaintiffs' leave of court would only provide
18  Plaintiffs an unfair advantage over Defendants, and allow Plaintiffs to try this case
19  by ambush.  Plaintiffs had every opportunity to have their original Motion for Leave
20  heard in May of 2009, however, Plaintiffs unilaterally removed it from the Court's
21  docket.  By re-submitting and re-setting Plaintiffs' Motion for Leave  this late in the
22  game does nothing more than prejudice Defendants' rights in that Defendants have
23  spent the last several months expending costs and fees in preparing for trial on the
24  merits of this matter.

25  **C.     Plaintiffs Have Not Demonstrated Prejudice**

26        Plaintiffs argue that they will incur extreme prejudice should they not be
27  allowed leave of Court to file their Motion for Terminating Sanctions because
28

1  "Plaintiffs will have no warning of what to expect from defendants' testimony, no
2  ability to support their case with evidence in defendants' possession, no
3  understanding of defendants' boilerplate affirmative defense,[2] or what additional
4  wrongdoing defendants committed."   The record, however, is completely devoid of
5  any evidence demonstrating that Plaintiffs will incur any prejudice. To put things in
6  perspective, the following is a time line of discovery provided and/or offered by the
7  Defendants:

8       a.     In the 2:06-CV-014818 matter ("2006 Lawsuit"), the following
9  documents were produced in response to Plaintiffs' discovery requests:   SHM
10 000001-06182 and REZ 0000001-018358.  Such documents included a complete
11 and full hard copy of each of the partnerships' general ledgers from 1994-2002,
12 SHM 056823-059750.   The parties agreed in the joint status report that such
13 documents do not need to be re-exchanged in this lawsuit. (See Izadi Declaration
14 ¶2).

15      b.     On February 10, 2009, per the parties agreement, Defendants served
16 their Answers to Plaintiffs' 36 sets of Interrogatories and served its Responses to
17 Plaintiffs nine (9) sets of Requests for Production (See Izadi Declaration ¶ 5).  On
18 February 11, 2009, Defendants advised Plaintiffs' counsel that responsive
19 documents were available for copying and inspection. (See Izadi Declaration ¶6).

20      c.     On or about  February 17, 2009, a disc was delivered to Plaintiffs
21 containing supplemental documents responsive to Plaintiffs' request for production,
22 which included P 000001-004280 (See Izadi Declaration ¶ 7).

23      d.     Since Howrey filed an interpleader action has been filed with respect to
24 the settlement funds that Defendants paid in this matter, Defendants have offered up

25 _____

26 [2] Defendants have fully provided a factual basis for each of Defendants' affirmative
   defenses in their original and amended Interrogatory answers. (See Izadi Declaration
27 ¶ 5) Moreover, this is a case of disputed financials and disputed calculations, all of
   which Plaintiffs have had in their possession for quite some time.
28

1 | all of the requested deponents for deposition.  Plaintiffs have refused, and this Court
2 | later denied such relief in its November 4, 2009 Minutes. (see Doc Nos. 149, 151,
3 | 152, 153, 168, 170, 180, 182, 183, and 191).

4 |     e.    On December 11, 2009, Defendants served Plaintiffs with their
5 | Amended Answers to Plaintiffs' 36 sets of Interrogatories and their Amended
6 | Responses to Plaintiffs' 9 sets of Requests for Production. (See Izadi Declaration ¶
7 | 14).

8 |     f.    On December 15, 16, 21 23, and January 4 Defendants sent Plaintiffs
9 | counsel supplemental financial documents although Defendants have confirmed that
10 | Plaintiffs received the same and identical financials through ordinary partnership
11 | means, and therefore, had the requisite custody, control and possession of such 2009
12 | financial documents. (See Izadi Declaration ¶¶ 15-16). However, Defendants
13 | produced such documents out of courtesy. (See Izadi Declaration ¶15).

14 |     First, Plaintiffs have received, and continue to receive, copies of the financials
15 | and audit reports. (See Izadi Declaration ¶ 15-16).  Second, Plaintiffs have had
16 | possession of all the requested documents for several years.  Third, Defendants have
17 | laid out in detail the factual basis to support their affirmative defenses in their
18 | Interrogatory Answers.  (See Izadi Declaration ¶ 5).  It should be noted that
19 | Plaintiffs served the identical forty-five sets of discovery requests on the Defendants
20 | in the 2006 Lawsuit, and to which they received answers and responsive documents
21 | in that lawsuit.  (See Izadi Declaration ¶ 5).

22 |     Plaintiffs have wholly failed to show any good cause to allow leave of Court
23 | to file their Motion for Terminating Sanctions, or that they will incur any prejudice
24 | if Plaintiffs' Motion for Leave is denied.

25 |
26 |
27 |
28 |

## II. PLAINTIFFS ARE NOT ENTITLED TO TERMINATING SANCTIONS[3]

### A.    Background

1.    On January 31, 2008, Plaintiffs served 45 sets of discovery upon Defendants. (See Doc. 64-12). Per the instruction of Defendants' criminal counsel, Defendants did not respond to the written discovery. (See Declaration of Okwumabua, Docket Nos. 65, 152).

2.    On February 15, 2008 (*before* Defendants' discovery responses were due), Defendants filed their Motion to Stay Case During Parallel Criminal Proceeding. (See Docket Nos. 55, 56 and 59)    In their motion, Defendants requested that the Court stay the case and not allow discovery to move forward until the conclusion of the criminal proceeding. (See Docket Nos. 55, 56, and 59).    This Court heard Defendants' motion on March 11, 2008.

3.    On or about May 28, 2008, Plaintiffs filed their motion to compel written discovery and depositions. (See Docket Nos. 62 and 63). Defendants did not answer discovery since the Court had not yet ruled on Defendants' Motion to Stay During Parallel Criminal Proceeding, which sought protection from discovery. (See Docket No. 55, 56, 63, 65, 70, 74, 75, 76, 77, 78, 83, 89 and 91).    Without hearing, Magistrate Judge Fernando M. Olguin granted Plaintiffs' Motion to Compel on June 16, 2009.

4.    Prior to Plaintiffs' filing of their motion to compel, the parties were engaged in settlement negotiations. (See Shaver Declaration at ¶ 2, Docket No. 182).

---

[3] In the unlikely event this Court grants Plaintiffs' leave of Court, Defendants object to this Court entertaining Plaintiffs' Motion for Terminating Sanctions on February 1, 2010 on the grounds that it violates Defendants' due process rights and fails to afford Defendants an opportunity to fully brief the issue as set forth in Local Rule 6-1.    Out of an abundance of caution, however, Defendants submit the following summary of their argument in opposition to Plaintiffs' Motion for Terminating Sanctions.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' FIRST AMENDED MOTION FOR LEAVE TO FILE MOTION FOR TERMINATING SANCTIONS

518002

1    5.    On or about June 25, 2008, the parties began to schedule the requested
2  depositions per the Court's June 16, 2008 Order. (See Izadi Declaration ¶ 3).  On or
3  about July 3, 2009 Plaintiffs noticed various depositions, which Defendants had
4  agreed to.  (See Shaver Declaration at ¶ 2, Docket No. 182).   The parties later
5  reached a settlement agreement, including cessation of discovery, and Plaintiffs
6  withdrew the deposition notices.  (See Shaver Declaration at ¶ 2).    During the
7  course of the parties' settlement negotiations, Plaintiffs unilaterally and routinely
8  continued discovery. (See Shaver Declaration at ¶ 2, Docket No. 182).  On or about
9  July 8, 2008, the parties and Magistrate Judge Olguin held a telephone conference
10  regarding the discovery issues. (See Docket No. 85).

11    6.    On or about July 8, 2008, Plaintiffs filed a joint stipulation continuing
12  discovery cut-off pursuant to a settlement in principle with a third party to the
13  litigation.  (See Docket 86).

14    7.    On or about July 16, 2008, Plaintiffs filed another joint stipulation and
15  order re settlement and continuing discovery cut-off, requesting that discovery be
16  continued until August 28, 2008.  (See Docket No. 89).

17    8.    On or about July 18, 2008 this Court denied Defendants' Motion to
18  Stay During Parallel Criminal Proceeding (See Docket No. 90).  Defendants had
19  prepared to file a Writ of Mandamus based on this ruling as well as the discovery
20  orders issued in this case. (See Shaver Declaration at ¶ 5, Docket 182).   However,
21  prior to filing the Writ of Mandamus on these issues, the parties entered into another
22  settlement. (See Shaver Declaration at ¶ 5, Docket 182).    Relying on this
23  settlement, Defendants did not file the Writ of Mandamus. (*Id*; See Exh. 1 of
24  Shaver Declaration, Docket 182.).

25    9.    On August 29, 2008, Plaintiffs filed another joint stipulation for an
26  order staying case and <u>vacating</u> procedural dates in light of settlement in principle.
27  (See Docket 91) (emphasis added). On September 4, 2008, Plaintiffs filed a renewed
28

DEFENDANTS' OPPOSITION TO PLAINTIFFS' FIRST AMENDED MOTION FOR LEAVE TO FILE MOTION
FOR TERMINATING SANCTIONS
518002

1 | joint stipulation for an order staying case and vacating procedural dates in light of
2 | settlement in principle. (See Docket 93).

3 |     10.   In November of 2008, the third-party withdrew from the transaction
4 | and refused to consummate the real estate interest purchases.  (See Shaver
5 | Declaration at ¶ 4; See also Docket No. 95).

6 |     11.   On January 20, 2009, Plaintiffs filed a joint request to set a status
7 | conference. (See Docket No. 95).   The parties represented to the Court that
8 | settlement in principle had fallen apart.  (*Id.*).   On January 27, 2009, this Court
9 | entered its minutes setting new procedural dates, which included a March 6, 2009
10 | discovery cut-off period. (See Docket Nos. 96 and 97).

11 |     12.   On January 30, 2009, Defendants served Plaintiffs with discovery
12 | requests. (See Izadi Declaration at ¶ 3).  To date, Plaintiffs never served objections
13 | to the written discovery, whether as a matter of materiality, over breadth, relevance,
14 | privilege, or otherwise, and never sought nor obtained a protective order excusing
15 | their compliance. (*Id.*)

16 |     13.   On February 5, 2009, Defendants requested that the depositions of
17 | Defendants, Cheryl Potashnik, Steve Cotton and John Jeter take place at the law
18 | offices of Friedman & Feiger as opposed to the offices of Defendants' prior counsel.
19 | (See Izadi Declaration at ¶ 7, Docket No. 183; See Izadi Declaration ¶ 4). At no time
20 | did Defendants object to these depositions because it was clear that the settlement
21 | was no longer imminent.  (See Izadi Declaration at ¶ 4).

22 |     14.   On February 6, 2009, Defendants  advised Plaintiffs' counsel that Mr.
23 | Jeter and Mr. Cotton were available for their depositions on the dates noticed by the
24 | Plaintiffs.  (See Izadi Declaration at ¶ 4).

25 |     15.   On February 10, 2009, per the parties' agreement, Defendants served
26 | Plaintiffs with responses and answers to their 45 sets of discovery requests.   (See
27 | Izadi  Declaration at ¶ 5).

28 |

DEFENDANTS' OPPOSITION TO PLAINTIFFS' FIRST AMENDED MOTION FOR LEAVE TO FILE MOTION
FOR TERMINATING SANCTIONS

518002

1    16.    Shortly thereafter, on or about February 17, 2009, a disc was delivered
2 to Plaintiffs' counsel with copies of supplemental documents responsive to
3 Plaintiffs' Request for Production, P000001-004280. (See Izadi Declaration ¶ 7).

4    17.    On February 13, 2009, counsel for Defendants and counsel for
5 Plaintiffs conferred regarding various issues, including the depositions of
6 Defendants and Defendants' former employees. (See Izadi Declaration at ¶ 8; See
7 Shaver Declaration at ¶ 7). During this telephone conference, Defendants had no
8 objection to presenting Defendants and their former employees for deposition, and
9 discussed exhibits and other matters, to ensure that the depositions would take place.
10 (*Id.*).    On February 13, 2009, counsel for Defendants advised Plaintiffs that they
11 would accept service on behalf of Affordable Housing Construction to appear for
12 deposition.    (See Izadi Declaration at ¶ 8).    Moreover, during this conference,
13 Plaintiffs made several complaints regarding Defendants' discovery responses, in
14 which Defendants agreed to amend and supplement. With respect to Defendants'
15 Responses to Plaintiffs' Request for Production, Plaintiffs requested that more detail
16 be provided to determine the responsive documents. (See Izadi Declaration ¶ 8).

17    18.    On February 16, 2009, the parties reached a settlement agreement. (See
18 Declaration of Izadi at ¶10; See Declaration of Shaver at ¶ 8; See also Docket Nos.
19 107 and 135). As part of this settlement, Defendants paid $800,000 into Plaintiffs'
20 counsel's trust fund. (*Id.*; see also *Howrey v. Brian Potashnik, et. al.,* Case No. 2:09-
21 cv-6181-PSG).    The parties also agreed <u>not</u> to proceed with any discovery pending
22 finalization and execution of the settlement agreement. (See Shaver Declaration at
23 ¶¶ 8-9).    This agreement included not amending the discovery responses as
24 previously agreed to in the February 13, 2009 conference. (See Izadi Declaration ¶
25 9).

26    19.    Since February 16, 2009, the Parties have either had a "settlement," an
27 outline of material terms for settlement or the Defendants have been fraudulently
28

1   induced into believing there was a settlement with Plaintiffs. (See Shaver
2   Declaration at ¶ 8; Docket No. 183).   The parties have exchanged at least ten drafts
3   of a settlement agreement between February 19th to April 30, 2009. (See Shaver
4   Declaration at ¶ 8). Defendants believed there was a settlement and understood that
5   documenting the settlement would be complicated because it required a settlement
6   agreement and amendments to the Limited Partnership Agreements for six
7   properties. (See Shaver Declaration at ¶ 8).

8       20.   Therefore, even as the Parties approached the April 6, 2009, motion
9   deadline, there was little concern that this case was settled and that trial was
10  unnecessary, thereby precluding the need for discovery, including the depositions of
11  Defendants. (Id.).   The parties further agreed that no discovery would be taken
12  pending finalization of the settlement agreement. (See Shaver Declaration at ¶¶ 8-9;
13  See Izadi Declaration at ¶ 9).   On April 1, 2009, Plaintiffs filed a joint stipulation
14  for an order to be relieved of settlement procedure due date in light of settlement in
15  principle. (See Docket No. 100).

16      21.   On April 13, 2009, Defendants' counsel advised Plaintiffs that they
17  were working on the latest draft of the settlement agreement that was received the
18  evening before, and that the depositions would not be necessary since the parties
19  were all working diligently to finalize the settlement agreements.   (See Shaver
20  Declaration at ¶ 10; See Exh. 2 to Shaver Declaration).   Counsel for Defendants
21  further advised Plaintiffs that should they move forward with discovery that they
22  would have to return the $800,000 in settlement funds. (Id.).   Plaintiffs' refused to
23  return the settlement funds and refused to continue discovery.   (See Shaver
24  Declaration at ¶ 10; See Exh. 3 to Shaver Declaration).

25      22.   On April 15, 2009, a Certificate of Non-Appearance was taken for the
26  following:   (i) Brian Potashnik; (ii) Texas Kirnwood; (iii) Texas Brook; (iv)
27  Arlington Senior; (v) Affordable Housing Construction; (vi) Cheryl Potashnik; (vii)

28

Steve Cotton; (viii) Southwest Housing Management; (ix) Southwest Housing
Development; and, (x) John Jeter.   (See Izadi Declaration at ¶ 10).

23.   On April 17, 2009, Plaintiffs advised Defendants that due to the
settlement and the parties "good faith commitment" to this settlement, they would
be asking the court to move various pre-trial dates. (See Exh. 4 to Shaver
Declaration).      To date, Plaintiffs still contend that an enforceable settlement
agreement exists between the parties and is entitled to the $800,000 settlement funds
that have been deposited into the Court's Registry. (See *Howrey v. Brian Potashnik,
et. al.,* Case No. 2:09-cv-6181-PSG).

24.   On  or about September 25, 2009, Defendants sought leave of Court to
conduct limited discovery out of time, and allow one or more of the following
depositions: (1) depositions of Defendants' representatives; (2) deposition of Brian
Potashnik; (3) deposition of Cheryl Potashnik; (4) deposition of John Jeter; (5)
deposition of Steve Cotton; (6) deposition of Affordable Housing Construction's
representative; and/or (7) deposition(s) of Plaintiffs' corporate representative(s).
(See Docket No. 149).  Plaintiffs opposed all the relief sought. (See Docket No.
168).  On November 4, 2009, this Court denied Defendants' request for leave. (See
Docket No. 191).

25.   On December 11, Defendants served their Amended Interrogatory
Answers and their Amended Responses to Plaintiffs Request for Production. (See
Izadi Declaration  ¶ 14).  Although Plaintiffs receive identical financial statements
and records that Defendants receive through the ordinary partnership means,
Defendants, as a courtesy to Plaintiffs, produced additional financials to the
Plaintiffs on or about December 15, 2009, December 16, 2009, December 22, 2009,
December 23, 2009, and January 4, 2010. (See Izadi Declaration ¶ 15, 19).

26.   Moreover, Defendants have advised Plaintiffs on several different
occasions, most like in February of 2009, that they could arrange to have a qualified

13

1  computer expert review Defendants' systems, however to the best of Defendants'

2  knowledge, Plaintiffs have not scheduled such an inspection with  Defendants'

3  management company of with the undersigned. (See Izadi Declaration ¶ 22).

4  **B.     The Record is Devoid Of Evidence Substantiating Terminating Sanctions**

5        Plaintiffs seek to avoid a trial on the merits on their claims, and request this

6  Court to strike defendants' answer, and upon submission of proof, order that a

7  default judgment be entered against Defendants.  However, such a drastic and severe

8  sanction is not justified under the circumstances, and Plaintiffs' motion must be

9  denied for numerous reasons.

10        A terminating sanction such as striking a defendants' answer and entering a

11  default judgment is a harsh penalty and is to be imposed only in extreme

12  circumstances. *Henderson v. Duncan,* 779 F.2d 1421, 1423 (9th Cir. 1986).  The

13  Ninth Circuit court of Appeals has identified five factors that the District Courts

14  must consider before granting a Motion for Terminating Sanctions and declaring a

15  default.  Those factors are: (1) the public's interest in expeditious resolution in

16  litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the

17  other party; (4) the public policy of favoring disposition of cases on their merits;

18  and, (5) the availability of less drastic sanctions. *Malone v. U.S. Postal Serv.,*  833

19  F.2d 128, 130 (9th Cir. 1987); *Adriana Int'l Corp. v. Thoeren, et. al.,* 913 F.2d 1406,

20  1412 (9th Cir. 1990).  Dismissal of a civil action is improper if it is imposed without

21  first considering the impact of the sanction and the adequacy of less drastic

22  sanctions.    In order for the sanction to comport with due process, the sanction

23  imposed under Fed. R. Civ. P. 37, must be specifically related to the particular claim

24  which was at issue in the order to provide discovery. *Fjelstad v. Am. Honda Motor*

25  *Co.,* 762 F.2d 1334, 1342 (9th Cir. 1985).

26        Since dismissal and default are such drastic remedies, they may be ordered

27  only in extreme circumstances – i.e., willful disobedience or bad faith. *In re Exxon*

28

14

1  *Valdez,* 102 F.3d 429, 432 (9th Cir. 1996); see *FDIC v. Conner,* 20 F.3d 1376, 1380
2  (5th Cir. 1994)(terminating sanction must be "remedy of last resort").  Because of
3  the severity of the penalty, courts require "clear and convincing" evidence (more
4  than a mere preponderance) that the violations were willful or in bad faith in  order
5  to sustain a terminating sanction. *Maynard v. Nygren,* 332 F.3d 462, 468 (7th Cir.
6  2003).

7  Public policy favors disposition of cases on their merits and terminating
8  sanctions should not be imposed where less drastic sanctions are available and
9  would provide effective redress for the particular violation. *Hyde & Drath v. Baker*
10  24 F.3d 1162, 1166-1167 (9th Cir. 1994); *FDIC v. Conner* 20 F.3d 1376, 1380-
11  1381(5th Cir. 1994). The amount of prejudice resulting from the violations and the
12  availability of less drastic sanctions are said to be "key factors." *Wanderer v.*
13  *Johnston,* 910 F.2d 652, 656 (9th Cir. 1990); *Chrysler Corp. v. Carey*, 186 F.3d
14  1016, 1019 (8th Cir. 1999)(prejudice to other party always required before imposing
15  terminating sanction); *United States v. $ 49,000 Currency,* 330 F.3d 371,376 (5th
16  Cir. 2003)(dismissal should be employed only where "lesser sanction would not
17  substantially achieve the desired effect").

18  Courts usually hesitate to impose outcome-determinative sanctions for initial
19  disobedience to orders. Dismissal or default is usually imposed as a last resort, after
20  repeated and willful failure to follow court orders and after lesser sanctions have
21  failed to serve the purpose. *Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*
22  427 U.S. 639, 642-643, 96 S.Ct. 2778, 2780-2781(1976); and see *Poulis v. State*
23  *Farm Fire & Cas. Co.* 747 F.2d 863  (3rd Cir. 1984); *United Artists Corp. v. La*
24  *Cage Aux Folles, Inc.* 771 F.2d 1265, 1271 (9th Cir. 1985).

25  Plaintiffs have sought the most severe sanction available, terminating
26  sanctions, which encompasses a high burden. This drastic remedy is only
27  appropriate where a party has "engaged deliberately in deceptive practices that
28

15

1 undermine that integrity of judicial proceedings...,willfully deceived the court and
2 engaged in conduct utterly inconsistent with the orderly administration of justice."
3 *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Willfulness, bad
4 faith, or fault must be proved by clear and convincing evidence. *Maynard v. Nygren*,
5 332 F.3d 462, 468 n.3 (7th Cir. 2003) ("In all circumstances, to justify dismissal as a
6 sanction, there must be clear and convincing evidence.")

7        Plaintiffs have not come close to meeting this higher burden. Other than
8 proffering the contested conclusions of Plaintiffs' counsel, Plaintiffs have not
9 demonstrated that Defendants willfully disobeyed the Court's June 16, 2008 Order
10 by not producing certain persons for deposition, failed to answer discovery, or that
11 Defendants had an obligation to preserve any financial electronic data from 1994-
12 2002, and certainly not by clear and convincing evidence. Nor can it be said that the
13 alleged discovery conduct Plaintiffs characterize as "egregious" justifies a
14 terminating sanction.   Here, per the parties' agreement, Defendants fully answered
15 Plaintiffs forty-five sets of discovery requests, and have produced hundreds and
16 thousands of pages of documents in this litigation. (See Izadi Declaration).
17 Plaintiffs, on the other hand, have not produced one page since they filed this
18 lawsuit (although the parties agreed to continue to supplement discovery from the
19 2006 Lawsuit).   Moreover, as stated by Plaintiffs, it is alleged that Defendants
20 disobeyed one initial Court order.

21        Defendants admit that on April 15, 2009, they did not produce the noticed
22 deponents for deposition, however, it was based on the following reasons:  (i) the
23 parties had a settlement agreement; (ii) Defendants deposited $800,000 with the
24 Plaintiffs' counsel for settlement purposes and the clear understanding that no
25 discovery would take place; and, (iii)  Plaintiffs refused to return the $800,000 to
26 Defendants in exchange that Defendants would produce the noticed deponents on
27 April 15, 2009 and it would be declared that no settlement agreement was in place

28

and litigation would continue.   (See Shaver Declaration; See Izadi Declaration ¶ 10).   In addition, prior to September 25, 2009, Defendants offered the requested deponents up for deposition, and Plaintiffs refused. (See Izadi Declaration). Moreover, Defendants have fully answered all the Interrogatory Answers propounded by Plaintiffs on February 10, 2009 and December 11, 2009. (See Izadi Declaration).   Furthermore, Plaintiffs have had hundreds of thousands of pages in their possession since at least 2006, and in which Defendants have continually supplemented throughout this litigation. (See Izadi Declaration).      Although admittedly far from perfect, Defendants' discovery conduct in this case represented a good faith effort to comply with their  discovery obligations without sacrificing the Defendants' freedom or right against self-incrimination. As with cases requiring a pattern of conduct to satisfy the "bad faith" element, it is clear that Brian Potashnik and Defendants' non-appearance at a deposition, as set forth herein, does not equate to purposeful and repeated obstruction for which deterrence might warrant terminating sanctions.      In addition, the record reflects that Plaintiffs' contentions, for the most part, are blatantly false.  Defendants served their Answers and Amended Answers to all thirty-six (36) of discovery requests, Defendants have produced more than 100,000 pages of documents, and Defendants have been more than willing to produce the requested deponents, which has been vehemently opposed by the Plaintiffs. (See Docket No. 168).  Moreover, Plaintiffs allege that Defendants have intentionally destroyed the electronic back up data for the 1994-2002 partnership general ledgers,[4] which is manifestly false because in 2002, Defendants were not put on notice of any of the allegations set forth in this lawsuit, and therefore Defendants had no duty to keep electronic data back up in 2002, when

---

[4] Defendants produced the entire and complete 1994-2002 general ledgers for each of the respective partnerships in hard copy in the 2006 Lawsuit.  (See Izadi Declaration ¶ ¶ 2, 18).

1  Defendants changed its electronic data bookkeeping to Timberline. (See Izadi
2  Declaration ¶ 18).

3      Plaintiffs' eagerness to resort to default against Defendants speaks volumes
4  about the fears of adjudication on the merits. More particular, it is important to point
5  out that Plaintiffs lack standing to claim the damages they seek in this lawsuit as
6  such damages belong to the respective partnerships, and under Texas law, Plaintiffs
7  not entitled to recover any damages that belong to a partnership. Furthermore, even
8  if Plaintiffs are allowed to put on evidence of damages, Defendants should be
9  allowed to cross examine Plaintiffs' witnesses, which would ultimately establish
10 that Plaintiffs' claims also barred by the applicable statute of limitations as a matter
11 of law.

12 **C.   Plaintiffs Have Not Demonstrated Prejudice**.

13     "[S]anctions which interfere with the litigant's claim or defenses violate due
14 process when they are imposed merely for punishment of an infraction that did not
15 threaten to interfere with the rightful decision of the case." *Wanderer v. Johnston*,
16 910 F.2d 652, 656 (9th Cir. 1990). Thus, the Ninth Circuit repeatedly has "held the
17 element of prejudice to be *essential*" in cases involving terminating sanctions. *Id*.;
18 *see also Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (describing
19 prejudice as a "key factor" that "must be considered"); *Phoceene Sous-Marine, S.A.*
20 *v. U.S. Phosmarine, Inc*., 682 F.2d 802, 806 (9th Cir. 1982) (reversing default where
21 deception was "peripheral" and did not cause prejudice).

22     Plaintiffs' attempts to describe the prejudice they have suffered as a
23 consequence of Defendants' alleged "egregious" conduct are weak at best. Plaintiffs
24 have had all of Defendants' financial general ledgers and documents for almost four
25 years. Plaintiffs had an opportunity to depose the key witness, Defendants' non-
26 retained expert, Richard Schaeffer. The only thing Plaintiffs did not have were the
27 electronic versions of the 1994-2002 general ledgers, which no longer exist.

28
DEFENDANTS' OPPOSITION TO PLAINTIFFS' FIRST AMENDED MOTION FOR LEAVE TO FILE MOTION
FOR TERMINATING SANCTIONS
518002

1    Defendants previously produced all general ledger accounting records from
2  1994 to 2002 for each of the Partnership in the 2006 Lawsuit. Thus, Plaintiffs have
3  not been prejudiced by the lack of the electronic records. Defendants made a
4  complete, thorough and diligent search for any electronically stored information of
5  the general ledger accounting records for this time period, and confirmed that such
6  electronic data no longer exists, and were destroyed/deleted in 2002, prior to the
7  initiation, threat, or notice of any lawsuit by the Plaintiffs. (See Izadi Declaration).
8  In 2002, Defendants further switched over from Quick Books to Timberline
9  software for the Management and Development databases, and therefore,
10  Defendants do not have access or possession of any electronically stored
11  data/information for the general ledger accounting records from 1994 to 2002.
12  Defendants also diligently searched the back up servers, and have confirmed that the
13  such requested electronic information/records were not backed up on the current
14  server. (See Izadi Declaration).  As such, Defendants do not have possession,
15  control, access or custody of any the requested electronically stored information,
16  and Defendants did not have possession, custody or control of such electronic
17  information since approximately 2002. (See Izadi Declaration).

18    Moreover, Defendants contend that they fully and completely responded to all
19  of Plaintiffs' discovery requests, and Plaintiffs have failed to make any showing that
20  Defendants' responses were evasive or non-responsive, and certainly have failed to
21  make a showing by clear and convincing evidence.  Furthermore, Plaintiffs have
22  failed to ever set forth or describe what documents that Defendants allegedly have
23  failed to produce.

24  **D.    Plaintiffs Have Failed to Show Lesser Sanctions Would be Ineffective**

25    Plaintiffs decline to engage in any serious discussion of lesser sanctions,
26  merely dismissing the imposition of fines, attorneys' fees, jury instruction, or similar
27  sanctions as "futile" with little or no explanation whatsoever.  Before imposing
28

19

terminating sanctions, the court should explicitly discuss on the record the alternative of lesser sanctions and explain why it would be inappropriate. *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004). An appellate court conducts a three-part analysis when determining whether a district court has properly considered the adequacy of less drastic sanctions: (1) did the court explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be inappropriate, (2) did the court implement alternative sanctions before ordering dismissal, and (3) did the court warn the party of the possibility of dismissal before actually ordering dismissal? *Adriana Int'l,* 913 F.2d at 1412-1413. The Fourth Circuit has emphasized that the lesser sanction of an explicit warning to the allegedly noncompliant party is a mandatory prerequisite to imposing the "extreme" and "drastic" sanction of default judgment. *Hatcock v. Navistar Int'l Transp. Corp.,* 53 F.3d 36, 40 (4th Cir. 1995)("[t]his court has emphasized the significance of warning a defendant about the possibility of default before entering such a harsh sanction"). Here, less drastic sanctions are feasible in that Plaintiffs have had significant amount of discovery at their fingertips for several years, and here, the Court has not provided a warning to the Defendants. As has been explained in detail above, Defendants, although not perfect, have at all times acted in good faith in an effort to comply with its discovery obligations. Thus, the imposition of sanctions would be entirely unjust and unwarranted under these circumstances. Should this Court be inclined to impose any sanctions in this matter, it should be monetary.

Plaintiffs have failed to demonstrate in non-speculative fashion that lesser sanctions-including the required prior warning – have been or would be ineffective here, instead leaping to the most draconian option. Here, Defendants request they be allowed their day in court and that this case be decided on the merits. There is a strong public policy in favor of deciding the cases on the merits.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' request for leave of Court to file their Motion fro Terminating Sanctions, and should the Court grant Plaintiffs leave, then set a briefing schedule in accordance with the local rules, and deny Plaintiffs' request for imposition of terminating sanctions against Defendants.

DATED: January 11, 2009

Lawrence J. Friedman
Ernest Leonard
Shauna A. Izadi
FRIEDMAN & FEIGER, L.L.P.
-and-
Geoff Gold
Christopher Fowler
RUTTER HOBBS & DAVIDOFF
 INCORPORATED


By:       /s/ Shauna A. Izadi
_____
                Shauna A. Izadi
Attorneys for Defendants Brian Potashnik,
Southwest Housing Management Company,
Texas Brook Properties Corp., Southwest
Housing Investment, Inc., Southwest Housing
Development Company Inc., Texas Melody
Properties Corp., Texas Birchwood Properties
Corp., Arlington Senior Housing Development
Corp., Texas Kirnwood Properties, Corp.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' FIRST AMENDED MOTION FOR LEAVE TO FILE MOTION
FOR TERMINATING SANCTIONS

518002

1  RUTTER HOBBS & DAVIDOFF
    INCORPORATED
2  GEOFFREY M. GOLD (State Bar No. 142625)
    *ggold@rutterhobbs.com*
3  CHRISTOPHER FOWLER (State Bar No. 243736)
    *cfowler@rutterhobbs.com*
4  1901 Avenue of the Stars, Suite 1700
5  Los Angeles, CA 90067
    Telephone: (310) 286-1700
6  Facsimile: (310) 286-1728
7
    FRIEDMAN & FEIGER, L.L.P.
8  Lawrence J. Friedman (Admitted Pro Hac Vice)
    lfriedman@fflawoffice.com
9  Ernest Leonard (Admitted Pro Hac Vice)
    eleonard@fflawoffice.com
10 Shauna A. Izadi (Admitted Pro Hac Vice)
    sizadi@fflawoffice.com
11 5301 Spring Valley Road, Suite 200
    Dallas, Texas 75254
12 Telephone: (972) 788-1400
    Facsimile: (972) 776-5313
13 Attorneys for Defendants

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16 NATIONAL CORPORATE TAX CREDIT          )  Case No.: CV 07-3528 PSG (FMOx)
    FUNDS III, IV, VI, VII; NATIONAL        )
17 CORPORATE TAX CREDIT, INC. III, IV,      )  Honorable Phillip S. Gutierrez
    VI, VII,                                )
18                                          )  **DECLARATION OF SHAUNA A.**
                Plaintiffs,                 )  **IZADI IN SUPPORT OF**
19          v.                              )  **DEFENDANTS' OPPOSITION**
                                            )  **TO PLAINTIFFS' FIRST**
20 BRIAN POTASHNIK; SOUTHWEST              )  **AMENDED NOTICE AND**
    HOUSING MANAGEMENT                      )  **MOTION FOR LEAVE TO FILE**
21 COMPANY; TEXAS BROOK                     )  **MOTION FOR TERMINATING**
    PROPERTIES CORP.; SOUTHWEST             )  **SANCTIONS**
22 HOUSING INVESTMENT, INC.;                )
    SOUTHWEST HOUSING                       )
23 DEVELOPMENT COMPANY, INC.;               )  Date:  February 1, 2010
    TEXAS MELODY PROPERTIES                 )  Time:  1:30 p.m.
24 CORP.; TEXAS BIRCHWOOD                   )  Dept.:    790
    PROPERTIES CORP.; ARLINGTON             )
25 SENIOR HOUSING DEVELOPMENT               )  Discovery Cutoff: March 6, 2009
    CORP.; TEXAS KIRNWOOD                   )  Pretrial Conf: January 25, 2010
26 PROPERTIES CORP.,                        )  Trial Date: February 9, 2010
                                            )
27              Defendants.

28
    ─────────────────────────────────────────────────────────
    DECLARATION OF SHAUNA A. IZADI IN SUPPORT OF DEFENDANTS' MOTION FOR  LEAVE TO
    CONDUCT LIMITED DISCOVERY OUT OF TIME

1 | I, Shauna A. Izadi, declare as follows:

2 |     1.    I am an attorney at law duly licensed to practice in the Courts of the
3 | State of Texas and Oklahoma, and have been admitted Pro Hac Vice before this
4 | Court. I am an associate with the law firm of Friedman & Feiger, L.L.P. counsel for
5 | Defendants in this matter. If called upon to do so, I could and would competently
6 | testify to the following.

7 |     2.    In the 2:06-CV-014818 matter, the following bate range of documents
8 | were produced in response to Plaintiffs' discovery requests:   SHM 000001-06182
9 | and REZ 0000001-018358.   Such documents, SHM 056823-59750 included a
10 | complete and full hard copy of each of the partnerships' general ledgers from 1994-
11 | 2002. We agreed with Plaintiffs counsel, which is reflected in the joint status report,
12 | that such documents do not need to be re-exchanged in this lawsuit.

13 |     3.    On June 25, 2008, the parties began coordinating and scheduling the
14 | depositions requested by the Plaintiffs in accordance with the Magistrate's June 16,
15 | 2008 Order.   On July 2, 2008, Mr. Giali confirmed Defendants' agreement to fully
16 | cooperate and participate in discovery. On January 30, 2009, on behalf of
17 | Defendants, I served sixteen sets of discovery requests upon Plaintiffs' counsel, Mr.
18 | Giali.Plaintiffs' counsel, William Seldeen, advised me via telephone on or about
19 | February 11, 2009, that Plaintiffs would not provide substantive responses to
20 | Defendants' discovery requests.

21 |     4.    On February 5, 2009, I requested that the depositions of Defendants,
22 | Cheryl Potashnik, Steve Cotton and John Jeter take place at the law offices of
23 | Friedman & Feiger as opposed to the offices of Defendants' prior counsel. At no
24 | time did Defendants object to these depositions because it was clear that the
25 | settlement was no longer imminent.   On February 6, 2009, I advised Mr. Giali that
26 | Mr. Jeter and Mr. Cotton were available for their depositions on the dates noticed by
27 | the Plaintiffs.

28 |

DECLARATION OF SHAUNA A. IZADI IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS'
AMENDED MOTION FOR LEAVE TO FILE MOTION FOR TERMINATING SANCTIONS

1     5.     On February 10, 2009, on behalf of Defendants, I served Plaintiffs with

2   Defendants Answers and Responses to Plaintiffs' forty-five sets of discovery

3   requests.    In Defendants' Answers, the factual basis for each of Defendants'

4   affirmative defenses is set forth therein.   Plaintiffs served the identical forty-five

5   sets of discovery requests on the Defendants in the 2006 Lawsuit, and to which

6   Defendants served answers and responsive documents to in the 2006 Lawsuit.

7     6.     On February 11, 2009, I conferred with Plaintiffs' counsel, Mr. Giali,

8   regarding document production and other discovery matters.   I also confirmed that

9   Defendants' discovery responses to Plaintiffs' forty-five sets of discovery had been

10   served, and responsive documents were available for copying and inspection.

11     7.     On or about February 17, 2009, a disc was delivered to Plaintiffs

12   containing supplemental documents responsive to Plaintiffs' request for production,

13   which included P 000001-004280.

14     8.     On February 13, 2009, on behalf of the Defendants, I conferred with

15   counsel for Plaintiffs, Mr. Dale Giali regarding various discovery issues, including

16   Plaintiffs' request to take the depositions of Defendants' representatives as well as

17   other witnesses. During this conference, Defendants had no objection to Plaintiffs'

18   taking the requested depositions, and the parties were coordinating their schedules to

19   ensure that these depositions would take place.   On February 13, 2009, I also

20   confirmed that Defendants' counsel would accept service on Affordable Housing

21   Construction's behalf to appear for deposition.   During the February 13, 2009

22   conference, Plaintiffs made several complaints regarding Defendants' discovery

23   responses, in which Defendants agreed to amend and supplement. With respect to

24   Defendants' Responses to Plaintiffs' Request for Production, Plaintiffs requested

25   that more detail be provided to determine the responsive documents.

26     9.     On February 16, 2009, the Parties reached a settlement agreement, but

27   were unable to finalize a settlement agreement based on Plaintiffs' repudiated

28

DECLARATION OF SHAUNA A. IZADI IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR LEAVE TO FILE MOTION FOR TERMINATING SANCTIONS

1  breach of this agreement with respect to its material terms. Since February 16, 2009,
2  the Parties have either had a "settlement," an outline of material terms for settlement
3  or the Defendants have been fraudulently induced into believing there was a
4  settlement with Plaintiffs. Whichever way, there have been ten drafts of a settlement
5  agreement exchanged by the Parties between February 19th to April 30, 2009.
6  Defendants believed there was a settlement and understood that documenting the
7  settlement would be complicated because it required a settlement agreement and
8  amendments to the Limited Partnership Agreements for six properties.  Therefore,
9  even as the Parties approached the April 6, 2009, motion deadline, there was little
10 concern that this case was settled and that trial was unnecessary, thereby precluding
11 the need for discovery, including the depositions of Defendants.  The parties further
12 agreed that no discovery would be taken pending finalization of the settlement
13 agreement, which included not amending the discovery responses as previously
14 agreed to in the February 13, 2009 conference.  Defendants did not realistically
15 believe that this matter for go to trial for the fact that both parties agreed at the time
16 that an enforceable settlement agreement was in place. (See Docket Nos. 102, 103,
17 104. 107, 112, 135).

18      10.    On April 15, 2009, a Certificate of Non-Appearance was taken for the
19 following:   (i) Brian Potashnik; (ii) Texas Kirnwood; (iii) Texas Brook; (iv)
20 Arlington Senior; (v) Affordable Housing Construction; (vi) Cheryl Potashnik; (vii)
21 Steve Cotton; (viii) Southwest Housing Management; (ix) Southwest Housing
22 Development; and, (x) John Jeter.  On April 15, 2009, Defendants did not produce
23 the noticed deponents for deposition for the following reasons: (i) the parties had a
24 settlement agreement; (ii) Defendants deposited $800,000 with the Plaintiffs'
25 counsel for settlement purposes and the clear understanding that no discovery would
26 take place; and, (iii)  Plaintiffs refused to return the $800,000 to Defendants in
27 exchange that Defendants would produce the noticed deponents on April 15, 2009
28

3

1  and it would be declared that no settlement agreement was in place and litigation
2  would continue.

3      11.    On April 17, 2009, I received an email from Mr. Giali confirming that
4  because the parties are "still fully committed to finalizing a settlement in good faith"
5  that they would file a stipulation with the Court asking that the Court move certain
6  pre-trial deadlines.

7      12.    On September 9, 2009, the Parties conferred again with respect to
8  various issues, including the issue of Defendants' outstanding discovery requests.
9  Although Mr. Giali, counsel for Plaintiffs stated that March 6, 2009 was the
10  discovery cut-off deadline, he refused to agree to answer the sixteen sets of
11  outstanding discovery requests propounded by Defendants.    During the September
12  9, 2009 conference, Defendants requested that the depositions of Defendants and
13  their former employees be taken, however Plaintiffs' counsel refused.

14      13.    Since Howrey filed an interpleader action has been filed with respect to
15  the settlement funds that Defendants paid in this matter, Defendants have offered up
16  all of the requested deponents for deposition.  Plaintiffs have refused, and this Court
17  later denied such relief in its November 4, 2009 Minutes. (see Docket Nos. 149,
18  151, 152, 153, 168, 170, 180, 182, 183, and 191).

19      14.    On December 11, 2009, Defendants served Plaintiffs with Defendants'
20  Amended Answers to Plaintiffs' thirty-five sets of Interrogatories and Defendants'
21  Amended Responses to Plaintiffs' nine sets of Requests for Production.

22      15.    On December 15, 16, 21 23, and January 4 Defendants sent Plaintiffs
23  counsel additional financial documents although Defendants have confirmed that
24  Plaintiffs received the same and identical financials through ordinary partnership
25  means.  On behalf of Defendants, I re-produced such documents out of courtesy to
26  the Plaintiffs.

27      16.    Plaintiffs have received, and continue to receive, copies of the
28  _____4_____
DECLARATION OF SHAUNA A. IZADI IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS'
AMENDED MOTION FOR LEAVE TO FILE MOTION FOR TERMINATING SANCTIONS

1 | financials and audit reports through ordinary partnership means.

2 | 17. I have never received any supplemental responses or documents from
3 | Plaintiffs in this lawsuit. I have reviewed the documents produced by the Plaintiffs,
4 | and there are hundreds of pages marked "intentionally withheld." To date, I have
5 | never received a privilege log from the Plaintiffs.

6 | 18. On behalf of Defendants, I have made a complete, thorough and
7 | diligent search to locate any electronically stored information concerning the 1994-
8 | 2002 general ledgers. I have confirmed that such electronic data for this time period
9 | no longer exists and were destroyed/deleted in 2002, prior to the initiation, threat or
10 | notice of any lawsuit by the Plaintiffs. I have also confirmed, on behalf of
11 | Defendants that any electronically stored information of the general ledger
12 | accounting records for this time period no longer exists, and were destroyed/deleted
13 | in 2002, prior to the initiation, threat, or notice of any lawsuit by the plaintiffs. I
14 | confirmed through email correspondence with Lori Meyer, an employee with
15 | Pinnacle, the current management group, and also with Cheryl and Brian Potashnik
16 | that in 2002, Defendants switched over from Quick Books to Timberline software
17 | for the Management and Development databases, and therefore, Defendants do not
18 | have access or possession of any electronically stored data/information for the
19 | general ledger accounting records from 1994 to 2002. I have also confirmed that the
20 | current back-up servers have also been diligently searched, and I have confirmed
21 | that the requested electronic information/records are not backed up on the current
22 | server. Defendants have not had possession, custody or control of such electronic
23 | information since approximately 2002. Defendants were not notified by Plaintiffs
24 | of any complaint or threat of a lawsuit until approximately December 20, 2004.

25 | 19. On December 15, 2009, December 16, 2009, December 22, 2009,
26 | December 23, 2009, and January 4, 2010 I sent Plaintiffs counsel, Dale Giali,
27 | additional financial documents although Defendants have confirmed that Plaintiffs

28 |
5

1 received the same and identical financials through ordinary partnership means, and
2 therefore, had the requisite custody, control and possession of such 2009 financial
3 documents.

4     20.    Plaintiffs have failed to ever set forth or describe what documents that
5 Defendants allegedly have not produced to Plaintiffs and that allegedly causes
6 Plaintiffs undue prejudice

7     21.    Defendant Brian Potashnik entered into a plea agreement with the
8 United States government the night before the criminal trial and participated through
9 the entire criminal trial as the United States' key witness.  Mr. Brian Potashnik was
10 not in plea bargain negotiations with the United States government at the time
11 Defendants filed their Ex Parte application for a continuance.

12     22.    I have advised counsel for Plaintiffs on numerous occasions that should
13 they wish to have their computer expert review the electronic system, they should
14 make the request and advise me of their expert and a time and date for the review, or
15 make the arrangement through the management company, Pinnacle.

16     I declare under penalty of perjury under the laws of the United States America
17 that the foregoing is true and correct.

18     Executed this the 11th day of January 11, 2010 in Dallas County, Texas.

20     /s/ Shauna A. Izadi

21     Shauna A. Izadi

28     6

DECLARATION OF SHAUNA A. IZADI IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR LEAVE TO FILE MOTION FOR TERMINATING SANCTIONS